STATE v. MARSHALL DICKEY.

(Filed 2 May, 1934.)

1. **Homicide G d—Where defendant relies upon self-defense, testimony of uncommunicated threats made by deceased is competent.**

   Where defendant in a prosecution for homicide contends he killed deceased in self-defense, and introduces evidence in support of the contention, testimony that on the afternoon preceding the night on which the killing occurred deceased had threatened to kill defendant upon sight is competent in support of the contention of self-defense, although the threat was not communicated to defendant prior to the homicide, and the exclusion of such evidence will be held for reversible error.

2. **Criminal Law L e—Exclusion of testimony is not cured by admission of testimony of another witness to same act done on different occasion.**

   In this prosecution for homicide defendant contended that he killed deceased in self-defense. The court admitted without objection testimony of one witness that deceased, shortly before the homicide, had made threats against defendant which were not communicated to defendant prior to the homicide, and excluded testimony of another witness of such threats made by deceased on a different occasion shortly before the homicide: *Held,* the error in the exclusion of the testimony of such threats by one of the witnesses was not cured by the admission of the testimony of the other witness, defendant being entitled to the credibility and weight of the testimony of the witness whose testimony was excluded.

APPEAL by defendant from *Stack, J.,* at January Term, 1934, of MECKLENBURG. New trial.

This is a criminal action in which the defendant was tried on an indictment for the murder of Edith Proctor, on 19 November, 1930, in Mecklenburg County.

When the action was called for trial, the solicitor for the State announced to the court, that on the evidence which he would offer at the trial, he would not ask for a verdict of guilty of murder in the first degree, but would ask for a verdict of guilty of murder in the second degree, or of manslaughter, as the jury might find the facts from all the evidence. The defendant entered a plea of "not guilty."

14—206

The evidence for the State tended to show that at about 8:00 o'clock p.m., on Saturday, 19 November, 1930, the defendant went to the home of Edith Proctor, in Mecklenburg County, and after knocking twice at her door, opened the door, and entered the house, with a knife in his hand. He said to Edith Proctor, who was in the house, "What in the hell do you mean?" As she walked toward him, he met her, and knocked her down, and threw a lamp at her. He then cut her in and across her abdomen. She bled profusely from the wound, and died within about three minutes, after the defendant had assaulted and cut her. When the defendant was arrested, he had a deep cut in his chest, inflicted apparently by a knife. Defendant told the officers who arrested him, that the deceased had cut him on his hand, and had stabbed him in the chest. Neither of the officers saw any wound on his hand. They did see a wound on his chest.

The defendant as a witness in his own behalf testified as follows:

"I am twenty-nine years old. I went to Edith Proctor's house about 8:00 o'clock on Saturday night, 19 November, 1930, to get my laundry from Lillie Ingram, who lived in the house with Edith Proctor. She had been washing for me about four weeks. When I got there I knocked at the door, and Edith said, 'Come in.' I walked in. She shut the door and said, 'What do you want?' I said, 'I came to get my laundry. Where is Lillie?' Edith answered, 'You get to hell out of here.' I said, 'Let me out,' and started toward the door. She cut me on the hand. I said, 'Let me out, girl.' She cut me on the hand again. I backed and started to go out of the house. She stabbed me when I reached for the door. I had done nothing except ask for Lillie. Every time I would reach for the door she would cut me. I was bleeding fast, and thought she was going to kill me. I ran my hand into my pocket, and opened my knife. I was begging her all the time to let me out. She made another dive at me, and I cut her. I did not try to kill her. I tried to keep her from killing me. When I went out the door, Edith threw a lamp at me. When I left the house she was standing up. She looked as if she might have been drinking. She cursed me and seemed to be mad. I guess she was mad at me, because I was engaged to another girl."

Evidence offered by the defendant tended to corroborate his testimony as to the circumstances surrounding the homicide.

Lila Chisholm, a witness for the defendant, testified as follows:

"I lived close to Edith Proctor. I saw her on that Saturday night at about 7:30 o'clock. She came to my house with a switch-blade knife open in her hand, and asked me if I had seen Marshall Dickey since dark. I told her 'No.' She said she was going to find him, and cut him when she found him. She was mad when she was talking to me. I did not know what the trouble was between her and Marshall, but she

was hunting Marshall. I know Lillie Ingram, and know that she washed for Marshall."

Pearl Lee Spencer, a witness for the defendant, testified as follows: "I knew Edith Proctor. I saw her at my house on the afternoon of the day she was killed. She had a knife—a switch-blade knife, about that long."

Counsel for defendant asked this witness: "What, if anything, did Edith Proctor say to you?" The defendant excepted to the ruling of the court, sustaining the State's objection to this question. The witness, if permitted by the court would have testified that Edith Proctor said she was going to kill Marshall Dickey as soon as she found him.

On all the evidence submitted to the jury, under the charge of the court, there was a verdict that the defendant is guilty of manslaughter.

From judgment that he be confined in the State's prison for a term of twenty years, the defendant appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Bruton for the State.*

*Kirkpatrick & Kirkpatrick and J. M. Scarborough for defendant.*

CONNOR, J. In this case the defendant admitted that he killed the deceased by cutting her with a knife—a deadly weapon. He offered evidence tending to show that at the time he cut the deceased, and inflicted upon her the fatal wound, she was assaulting him with a knife, and that under all the circumstances as disclosed by the evidence, he was unable to escape from the murderous assault the deceased was then making upon him. This evidence was amply sufficient to support the contention of the defendant that he killed the deceased in self-defense, and that for this reason he was not guilty.

In support of his contention that he killed the deceased in self-defense, the defendant offered as evidence the testimony of a witness that shortly before the homicide, she saw the deceased, and that she then had a knife and said that as soon as she saw the defendant, she was going to cut him. This testimony was admitted without objection on the part of the solicitor for the State, and was submitted by the court to the jury as evidence in behalf of the defendant. There was no evidence tending to show that this threat of the deceased was communicated to the defendant prior to the homicide.

In further support of his contention that he killed the deceased in self-defense, the defendant offered as evidence the testimony of another witness that she saw the deceased during the afternoon preceding the homicide, and that deceased then had a knife, and said that she was going to kill Marshall Dickey, the defendant, as soon as she saw him. There

was no evidence tending to show that this threat was communicated to the defendant prior to the homicide. Upon objection by the State, this testimony was excluded, and defendant excepted. On his appeal to this Court, the defendant assigns the exclusion of this testimony as error. The assignment of error must be sustained.

In *S. v. Baldwin,* 155 N. C., 494, 71 S. E., 212, it is said: "It was insisted further that his Honor made an erroneous ruling in excluding evidence of certain uncommunicated threats of the deceased uttered shortly before the homicide, tending to show animosity towards the prisoner, and a purpose to do him serious bodily harm. It is now generally recognized that in trials for homicide uncommunicated threats are admissible (1) where they tend to corroborate threats which have been communicated to the prisoner; (2) where they tend to throw light on the occurrence and aid the jury to a correct interpretation of the same, and there is testimony ultra sufficient to carry the case to the jury tending to show that the killing may have been done from a principle of self-preservation, or the evidence is wholly circumstantial and the character of the transaction in doubt. *Turpin's case,* 77 N. C., 473; *S. v. McIver,* 125 N. C., 645; Hornegan & Thompson Self-defense, 927; *Stokes' case,* 53 N. Y.; *Holler v. State,* Ind., 57; *Cornelius v. Commonwealth,* 54 Ky., 539. In the present case, while there was evidence, on the part of the State tending to show that the prisoner fought wrongfully, and killed without necessity, there is testimony on his part tending to show a homicide in his necessary self-defense, and the proposed evidence, tending as it did to throw light upon the occurrence should have been received."

It cannot be held that the error in excluding the testimony of this witness tending to show threats by the deceased to assault the defendant with a knife as soon as she saw him, was harmless for the reason that the testimony of another witness for the defendant tending to show similar threats on another occasion, was admitted and submitted to the jury. In *Eaves v. Cox,* 203 N. C., 173, 165 S. E., 345, it is said: "Obviously, if a party offers the competent testimony of a given number of witnesses, but the court excludes the testimony of one, even though the testimony of others is admitted without objection, notwithstanding, the offering party is entitled to the credibility and weight of the testimony of the excluded witness." This principle is particularly applicable in the instant case, where the excluded evidence tended to show threats by the deceased, on a different occasion than that shown by the testimony which was admitted. The defendant is entitled to a new trial. It is so ordered.

New trial.