STATE OF NORTH CAROLINA v. JOHNNY ALLISON

No. 8127SC1238

(Filed 15 June 1982)

**1. Criminal Law § 77.1— desire for attorney—admission of evidence concerning**
   It was not prejudicial error to allow testimony by a detective that defendant was not willing to answer questions and wanted to talk to an attorney.

**2. Criminal Law §§ 50.1, 63— expert testimony concerning mental capacity—basis for opinion admissible**
   The trial court should have allowed an expert witness in the field of psychiatry to testify as to the content of his conversations with the defendant; however, exclusion of this testimony was not prejudicial error since there was sufficient testimony to demonstrate to the jury that the witness spent considerable time working with the defendant and had a deep and broad basis for his opinion as to the defendant's legal sanity.

**3. Criminal Law § 63— failure to permit one psychiatrist to testify concerning diagnoses of other psychiatrists—no error**
   In a prosecution for murder in the second degree and other crimes, the trial court did not err in failing to permit a psychiatrist to testify what the diagnoses of other psychiatrists who had tested defendant had been since no foundation was laid for admission of the other diagnoses and since it was not shown that such diagnoses were contained in the defendant's official hospital record.

   Judge BECTON dissenting.

APPEAL by defendant from *Friday, Judge.* Judgments entered 5 March 1981 in Superior Court, GASTON County. Heard in the Court of Appeals on 4 May 1982.

Defendant was charged with two counts of assault with a deadly weapon with intent to kill inflicting serious injuries, with murder in the second degree, and with willfully and wantonly setting fire to a dwelling house. He pleaded not guilty.

Evidence for the State tended to show that the defendant was about 37 years old and had a long history of mental illness. Defendant lived with his parents and spent most of his time in his room listening to gospel music. Defendant saw a psychiatrist once a week and received weekly injections at the mental health clinic. Defendant's father was awakened by screams during the early morning hours of 8 December 1980. The defendant was stabbing his mother with a butcher knife. Both the father and defendant's

younger brother tried to stop defendant, and they were both stabbed during the scuffle. They all got out of the house, and the house burned. Officers arriving at the scene found the defendant standing outside the burning house. He appeared calm and stated that he had started the fire. The defendant's mother died as a result of her stab wounds.

Defendant was found guilty on all four charges and was sentenced to prison terms of not less than 25 nor more than 30 years for the second degree murder charge; of 7 to 10 years for both counts of assault with a deadly weapon with intent to kill, each sentence to run at the expiration of the sentence in the second degree murder count and not concurrently; and of 5 to 10 years for setting fire to a dwelling house. He appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Harry H. Harkins, Jr., for the State.*

*Public Defender Curtis Harris for defendant appellant.*

HEDRICK, Judge.

[1] Detective Gary Queen testified that he advised defendant of his constitutional rights at about 5:00 a.m. on 8 December 1980 and that defendant replied that he understood his rights. Detective Queen asked defendant whether he was willing to answer questions, and the defendant replied that he was not, that he wanted to talk to an attorney. By his first assignment of error, the defendant argues that this testimony should not have been allowed since it "can easily be considered by the jury as an implied admission to the general issue of guilt." Defendant cites *State v. Castor*, 285 N.C. 286, 204 S.E. 2d 848 (1974); however, we find that case inapplicable to the present situation.

The defendant in *Castor* remained silent while a prospective witness for the prosecution was brought into his presence and was asked questions which elicited answers incriminating as to defendant. Our Supreme Court held that evidence of this confrontation should not have been admitted at trial since the defendant's exercise of his constitutional right to remain silent could not be considered an admission of the statements made by the prospective witness. Such is not the situation here. In this case there was no evidence of a specific incriminating accusation

being made against the defendant at the time he asserted his rights.

> Where, as here, there is evidence that defendant simply asserted his rights, but no evidence that he remained silent (because he had asserted his rights) in the face of a specific incriminating accusation, the Miranda rule does not apply, for there has been no accusation made which the defendant, by his silence, might be taken to have admitted. (Citation omitted.)

*State v. Love*, 296 N.C. 194, 202, 250 S.E. 2d 220, 226 (1978). We therefore reject the argument made by defendant in support of this assignment of error. Furthermore, we find no reasonable possibility that admission of this evidence, if erroneous, contributed to the conviction. *See State v. Love, supra; State v. Hamilton*, 53 N.C. App. 740, 281 S.E. 2d 680 (1981); G.S. § 15A-1443(b). We overrule the assignment of error.

[2] Defendant presented two psychiatric witnesses, Dr. James Groce and Dr. Harris L. Evans. Each testified that in his opinion the defendant was unable to distinguish between right and wrong with respect to his behavior at the time of the alleged crimes. Dr. Groce testified that his diagnosis was based in part on interviews with the defendant. The doctor was asked what the defendant had said, but objection was lodged and sustained. Dr. Groce's answer has been included in the record. Defendant, relying upon *State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979), argues that the doctor should have been allowed to give this testimony before the jury. We agree.

The defendant in *Wade* was convicted of three murders. A psychiatric witness for the defense was allowed to testify that in his opinion the defendant was incapable of distinguishing between right and wrong at the time of the killings; however, this witness was not allowed to testify as to the basis of his opinion. On appeal, our Supreme Court drew the following propositions from the case law:

> (1) A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, including the patient, if such information is inherently reliable

even though it is not independently admissible into evidence. The opinion, of course, may be based on information gained in both ways.

(2) If his opinion is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion. (Citation omitted.)

*Id.* at 462, 251 S.E. 2d at 412. The Court concluded that the witness should have been allowed to testify as to the content of his conversations with the defendant. Similarly, Dr. Groce should have been allowed to give such testimony in the present case. The trial court erred, but we must consider whether this error prejudiced the defendant. We conclude that it did not.

Evidence of a psychiatric witness' conversations with a defendant is not admissible as substantive evidence. It is admitted only to show the basis for the witness' opinion as to the defendant's legal sanity. As explained in *Wade,*

"[T]o allow a psychiatrist as an expert witness to answer without any explanation . . . would impart a meaningless conclusion to the jury. The jury must be given an opportunity to evaluate the expert's conclusion by his testimony as to what matters he took into consideration to reach it."

*Id.* at 463, 251 S.E. 2d at 412, *quoting State v. Griffin,* 99 Ariz. 43, 49, 406 P. 2d 397, 401 (1965). The psychiatric witness in *Wade* was permitted to tell the jury little more than his opinion as to sanity. He was not allowed to testify as to his conversations with the defendant, his medical findings, or his medical diagnoses. By contrast, Dr. Groce testified at length as to this defendant's history and his own observations, findings and diagnoses. In part, he testified as follows:

When I first saw the defendant he was sitting calmly. He was fairly neat. His motor movements were somewhat sluggish when he walked around. The defendant was given four psychological tests. The first was a Schlossen Intelligence Test. The second was a wide range test of his reading ability. The third was some projective drawings. The fourth was a Bender Gestalt Visual/Motor Test. On the I.Q. Test the defendant scored 61. This score suggest[s] some mild retardation. Mr. Allison read at an 8.6 grade level. The Bender Test

suggest [sic] that the defendant might have a degree of brain damage. The defendant's projective drawings did appear consistent with mental illness. I conducted interviews with the defendant to evaluate his mental condition. I felt he was suffering from a mental illness. I observed the defendant's ward behavior. The defendant was at first rather isolated. He stayed by himself and didn't interact very much with other patients. He did respond when he was given instructions. He did not initiate any conversation except to ask very routine questions. During his hospital stay, defendant gradually improved his interaction with other patients and staff. The defendant was given Melloril when he first came to Dix. Melloril was discontinued after five days, and he was placed on Haldol. The defendant was also given Cogenton. The defendant was administered Melloril to control hallucinations that he described. The defendant was put on Haldol because of conversation I had with him. Haldol is a tranquilizer. It is a fairly powerful medication. Haldol is an anti-psychotic medication that is used to control manifestations of mental illness.

I initially diagnosed the defendant as paranoid schizophrenia. I later changed that diagnosis to chronic undifferentiated schizophrenia. My diagnosis was based upon interviews, ward behavior and conversation with the defendant. Paranoid schizophrenia is a disturbance of an individual's thinking, mood and behavior. The main features are some paranoid thoughts, mistrust and suspiciousness. Chronic undifferentiated schizophrenia is a sub-type of schizophrenia. It still includes disturbances of thinking, mood and behavior but is less clearly focused on paranoid thoughts. Paranoid thoughts are thoughts of some intent to be harmed. They could be generalized with suspiciousness and mistrust. I obtained the defendant's past medical reports and psychiatric history. My diagnosis has been consistent with other diagnosis. The defendant's psychiatric history dates back to 1972.

This testimony was sufficient to demonstrate to the jury that Dr. Groce spent considerable time working with the defendant and had a deep and broad basis for his opinion as to the defendant's legal sanity. He should have been allowed to testify additionally

as to his conversations with the defendant, but we do not believe that the exclusion of this evidence so impaired his testimony that a jury would have otherwise reached a different result. We hold this error harmless. Additionally, we note that Dr. Evans was allowed to testify as to his conversations with the defendant and that his conversations revealed some of the same points as those conducted by Dr. Groce.

[3]   Defendant's third assignment of error deals with two evidentiary rulings during the testimony of Dr. Evans. Dr. Evans testified that he was familiar with diagnoses of the defendant made by other psychiatrists and that he had used the other diagnoses in forming his own. He was asked, "What have those diagnoses been?" Objection was sustained, and defendant excepts. We find no error in this ruling. As noted above, a psychiatric witness may testify to the information he relied upon in forming his opinion for the purpose of showing the basis of the opinion. However, such information must be "inherently reliable." *State v. Wade, supra* at 462, 251 S.E. 2d at 412. *State v. DeGregory,* 285 N.C. 122, 203 S.E. 2d 794 (1974), stands for the proposition that an expert witness may base his opinion as to a defendant's sanity "upon both his own personal examination and other information contained in the patient's official hospital record." *Id.* at 134, 203 S.E. 2d at 802. In the present case no foundation was laid for admission of the other diagnoses relied upon by Dr. Evans since it was not shown that such diagnoses were contained in the defendant's official hospital record and no other evidence was presented to show that the diagnoses were inherently reliable. In the absence of such a foundation, objection was properly sustained. Furthermore, we note that Dr. Evans' answer to this question has not been included in the record. Finally, defendant excepts to the trial court's sustaining an objection to the question "Would a person with the defendant's condition be mistrustful?" Dr. Evans would have answered the question, "I would say yes." We find no possible prejudicial error in this ruling since Dr. Evans' very next testimony, admitted without any objection, was to the effect that he found defendant mistrustful and frightened.

In defendant's trial, we find

No error.

Judge HILL concurs.

Judge BECTON dissents.

Judge BECTON, dissenting.

As does the majority, I believe it was error to exclude Dr. Groce's explanation of the bases for his opinion that defendant was unable to distinguish between right and wrong. The majority and I differ on the prejudicial effect of the exclusion of the proffered evidence, and I, therefore, dissent.

*State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979) is, in my view, controlling. To allow Dr. Groce to give an expert opinion on sanity without fully explaining the bases for his opinion "impart[s] a meaningless conclusion to the jury. The jury must be given an opportunity to evaluate the expert's conclusion by his testimony as to what matters he took into consideration to reach it." *Id.* at 463, 251 S.E. 2d at 412, *quoting State v. Griffin*, 99 Ariz. 43, 49, 406 P. 2d 397, 401 (1965).

After setting out in detail the number and type tests Dr. Groce gave defendant, the type and the effect of medication defendant was given, and the diagnoses made, the majority then states, as if this were dispositive of the issue, that: "[t]his testimony was sufficient to demonstrate to the jury that Dr. Groce spent considerable time working with the defendant and had a deep and broad basis for his opinion as to the defendant's legal sanity." Ante, p. 6. The teaching of *Wade* is that the facts and factors that form and support the "deep and broad basis for [a psychiatrist's] opinion" are as important as the opinion.

Significantly, the jury was not allowed to hear the following testimony that assisted Dr. Groce in forming his opinion that defendant was suffering from chronic undifferentiated schizophrenia:

> He reported to me that he had been hearing voices, arbitrary hallucination kind of voices, talking to him every day; that he had *heard his family plotting to kill him; that he had heard his mother offer money to have him killed;* that his family made comments like, "He eats too much, he's greedy," he told me that he had heard shooting outside of the house,

and that *he knew from the conversation in the house that that was the hired killers who had been practicing to kill him and they were waiting for him to come out of the house.* He told me that he did not remember the actual assault on his family members. [Emphasis added.]

It was critically important for the jury in evaluating Dr. Groce's credibility to hear this testimony. Moreover, it is not sufficient simply to "note that Dr. Evans was allowed to testify as to his conversations with the defendant and that his conversations revealed some of the same points as those conducted by Dr. Groce." Ante, p. 7. Dr. Evans' testimony is not nearly as descriptive as Dr. Groce's, and, more important, does not specifically suggest that defendant thought his family was plotting to kill him or have him killed. The jury may have viewed Dr. Evans' testimony as merely suggesting that defendant thought that neighbors wanted his mother to commit him to a mental institution. To highlight the difference between Dr. Groce's testimony that was excluded, and Dr. Evans' testimony, that was heard by the jury, I include it herein:

> The defendant had the idea about neighbors meeting his mother and paying her a thousand dollars to get rid of him. He related that people were saying things about him in the neighborhood. That they were running a liquor store across the street from him, and he thought that was a bad thing. He didn't like that. He told me he thought his mother was connected in some way with getting rid of him. I knew the defendant's mother. She accompanied the defendant to the mental health center.

Believing that the exclusion of Dr. Groce's testimony was harmful, not harmless, I vote for a new trial.