STATE OF NORTH CAROLINA v. JOHNNY ALLISON

No. 432A82

(Filed 11 January 1983)

**Criminal Law § 63— basis of psychiatrist's opinion—conversations with defendant —exclusion as prejudicial error**

In a prosecution for felonious assault, second degree murder and wilfully setting fire to a dwelling house, the trial court erred in the exclusion of a psychiatrist's testimony concerning the substance of his conversation with defendant which provided the basis for his opinion that defendant did not know the difference between right and wrong at the time of the offenses. Fur-thermore, such error was not cured by the witness's testimony about his examination and treatment of defendant and his diagnosis of defendant's mental condition or by the testimony of a second psychiatrist concerning his conversations with defendant which embraced some of the same details about which the first witness was not allowed to testify, and the error was prejudicial since defendant was deprived of the weight and credibility of testimony which was crucial to his defense of insanity, and there is a "reasonable possibility" that had the jury heard such evidence it might well have accepted the first psychiatrist's conclusion that defendant did not know the difference between right and wrong at the time of the incidents, and, thus, would have found defendant not guilty by reason of insanity.

THIS matter comes to us on appeal as a matter of right pursuant to G.S. 7A-30(2) (1981) from the decision of the Court of Appeals, 57 N.C. App. 635, 292 S.E. 2d 288 (1982), one judge dissenting, finding no error in defendant's trial before *Friday, Judge*, at the 2 March 1981 Session of Superior Court, GASTON County. A jury convicted Johnny Allison, defendant, of two counts of assault with a deadly weapon with intent to kill inflicting serious bodily injury, murder in the second degree, and wilfully and wantonly setting fire to a dwelling house. On 5 March 1981 Judge Friday sentenced defendant to prison terms of not less than twenty-five nor more than thirty years for the second-degree murder charge; of seven to ten years for the two counts of assault with a deadly weapon with intent to kill inflicting serious bodily injury, the

sentence to run at the expiration of the sentence for the second-degree murder conviction; and of five to ten years for setting fire to a dwelling house.

In this appeal we are to determine whether under the facts in this case, it was prejudicial error to allow the jury to hear an expert witness's psychiatric opinion but not that part of the basis of the opinion which consisted of conversations the expert had with defendant. We hold that it was prejudicial error.

*Rufus L. Edmisten, Attorney General, by Harry H. Harkins, Jr., Assistant Attorney General, for the State.*

*Curtis O. Harris, Public Defender, for defendant.*

CARLTON, Justice.

I.

Only a brief recitation of the facts is necessary for an understanding of our decision. Johnny Allison, defendant, was charged with second-degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious bodily injury, and setting fire to a dwelling house. Defendant entered pleas of not guilty to all charges by reason of insanity at the time of the alleged offenses. The evidence tended to show the following:

Defendant was about thirty-seven years old and had a long history of mental illness. At the time of the alleged offenses, he was living with his parents but previously had been confined in mental institutions in this State as well as in Georgia and Virginia. He was attending the mental health clinic on a weekly basis and was receiving injections there. He stayed in his room most of the time and listened to gospel music.

During the early morning hours of 8 December 1980 defendant's father was awakened by screams and observed defendant stabbing defendant's mother with a butcher knife. A scuffle between defendant, his father and his younger brother ensued and both the father and younger brother were stabbed. At some point the house caught fire. The entire family left the house and the house burned. Defendant stated to officers who arrived at the scene that he had started the fire. His mother died as a result of a stab wound to the heart.

Two psychiatrists, Dr. James Groce of Dorothea Dix Hospital in Raleigh and Dr. Harris L. Evans of the Gaston and Lincoln Counties Mental Health Center, testified for defendant. Both testified that in their opinions defendant was unable to distinguish between right and wrong with respect to his behavior at the time of the alleged crimes.

Dr. Groce testified that, pursuant to a court order, he examined defendant on 10 December 1980. He worked as head of an evaluation and treatment team for the thirteen days defendant was at Dorothea Dix Hospital. Numerous tests were given to defendant. One test indicated defendant had mild retardation; another test suggested defendant might have a degree of brain damage. Dr. Groce felt defendant was suffering from a mental illness, observing that defendant was isolated from others in the ward. Defendant was given medication while in the hospital. Dr. Groce's initial diagnosis was that defendant was a paranoid schizophrenic. He later changed that diagnosis to chronic undifferentiated schizophrenia. Paranoid schizophrenia, according to Dr. Groce, is a "disturbance of an individual's thinking, mood and behavior. The main features are some paranoid thoughts, mistrust and suspiciousness." Chronic undifferentiated schizophrenia is a sub-type of schizophrenia. Dr. Groce also explained that paranoid thoughts are thoughts of some intent to be harmed and could be generalized with suspiciousness and mistrust.

Dr. Groce was then asked to tell the jury what defendant had told him that caused him to reach his psychiatric diagnosis. The State objected and the trial court sustained the objection. The record reveals Dr. Groce would have answered as follows:

He reported to me that he had been hearing voices, arbitrary hallucination kind of voices, talking to him every day; that he had heard his family plotting to kill him; that he had heard his mother offer people money to have him killed; that his family made comments like, "He eats too much, he's greedy," he told me that he had heard shooting outside of the house, and that he knew from the conversation in the house that that was the hired killers who had been practicing to kill him and they were waiting for him to come out of the house. He told me that he did not remember the actual assault on his family members.

Dr. Groce further testified on voir dire that the information which the trial court did not allow the jury to hear assisted him in forming his opinion that defendant was suffering from chronic undifferentiated schizophrenia. He also stated on voir dire that he was a forensic psychiatrist and that this specialty differs from one in the practice of private psychiatry in that his job "is limited to dealing with legal issues and people's problems, emotional problems, related to those legal issues.

Dr. Evans stated to the jury that he first saw defendant in 1975 but that defendant had been seen at the center since 1972. Dr. Evans, in supervising defendant's medication regimen, had been treating defendant for what he considered to be a classic case of chronic schizophrenia which includes several symptoms. Defendant was alienated from other people and had a split personality, two of the symptoms of schizophrenia. In the doctor's opinion, defendant was psychotic at the time of the offenses which meant that defendant was "operating unrealistically" at that time. He noted that a psychotic person has false ideas and "these false ideas are often in terms of having some outside influence that is not real." He testified, "[t]he person may hear things and operate as if they were real."

Dr. Evans further testified that in his opinion the defendant was dangerous to himself and to others and would need continued treatment. He also noted that his interviews and evaluation revealed that defendant was mistrustful and frightened and that his mistrust and fright were directed toward his family.

After he was convicted and sentenced, as noted above, defendant appealed to the Court of Appeals. Defendant's primary contention, which he reiterates here, was that the trial court erred in not allowing Dr. Groce to give the omitted testimony, stated above, to the jury. He relied primarily on this Court's holding in *State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979). The Court of Appeals' majority agreed that the trial court erred in not allowing the testimony but found that the error was not prejudicial to the defendant. *State v. Allison*, 57 N.C. App. 635, 292 S.E. 2d 288 (1982). Judge Hedrick, writing for the majority, distinguished the facts in *Wade* from those here and noted that the testimony of Dr. Groce which was presented to the jury adequately demonstrated to the jury that the doctor had spent con-

siderable time working with defendant and had "a deep and broad basis for his opinion as to the defendant's legal sanity." *Id.* at 639, 292 S.E. 2d at 291. He also noted that "Dr. Evans was allowed to testify as to his conversations with the defendant and that his conversations revealed some of the same points as those conducted by Dr. Groce." *Id.* at 640, 292 S.E. 2d at 291.

Judge Becton dissented, believing that the error committed by the trial court in failing to allow the testimony constituted prejudicial error. We agree with Judge Becton, reverse the Court of Appeals, and order a new trial.

II.

In *State v. Wade,* 296 N.C. 454, 251 S.E. 2d 407 (1979), this Court held that a defendant is entitled to have the jury hear the basis for a psychiatrist's (or psychologist's) conclusion regarding the defendant's ability to distinguish right from wrong. Put another way, if a psychiatrist's (or psychologist's) opinion is admissible, "the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion." 296 N.C. at 462, 251 S.E. 2d at 412 (citing *Penland v. Bird Coal Co.,* 246 N.C. 26, 97 S.E. 2d 432 (1957)). In quoting a passage from *State v. Griffin,* 99 Ariz. 43, 49, 406 P. 2d 397, 401 (1965), a decision of the Supreme Court of Arizona, this Court explained in *Wade* the reason for the rule it was articulating:

> In the same vein to allow a psychiatrist as an expert witness to answer without any explanation . . . would impart a meaningless conclusion to the jury. The jury must be given an opportunity to evaluate the expert's conclusion by his testimony as to what matters he took into consideration to reach it. Therefore the psychiatrist should be allowed to relate what matters he necessarily considered as a "case history" not as to indicate the ultimate truth thereof, but as one of the bases for reaching his conclusion, according to accepted medical practice.

296 N.C. at 463-64, 251 S.E. 2d at 412.

Since our holding in *Wade,* the General Assembly in 1981 enacted G.S. 8-58.14 (1981) which covers disclosure of the basis—the underlying facts or data—of an expert's opinion. G.S. 8-58.14 (1981) provides:

Upon trial the expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requests, otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or voir dire before stating the opinion. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

The statute essentially deals with the *order* in which an expert is to give the various parts of his testimony. It sets out the condition under which an expert is allowed to give his opinion *before* disclosing the basis upon which that opinion rests. The statute provides that an expert may give his opinion first, without *prior* disclosure of the underlying facts or data, so long as an adverse party does not require otherwise. This provision appears to assume that at some point during the direct examination the expert will disclose the basis of his opinion: the statute merely provides that the expert need not give the basis first. If, however, the expert does not disclose the basis of his opinion on direct examination he can be required to give the basis on cross-examination. Again, the statute assumes that, at the very least, the expert is *allowed* to disclose the basis on direct examination.[1] In a criminal case where the defendant claims he is not guilty by reason of insanity, it is especially imperative that the jury hear not only the expert's opinion as to the defendant's state of mind, but the basis for the expert's psychiatric opinion as well. Indeed, the United States Court of Appeals, sitting *en banc*, went so far as to *require* that the jury be provided with the basis for an expert's psychiatric opinion. The court wrote:

The goal of avoiding undue dominance of the jury by expert testimony does not require ostrich disregard of the key issue of causality. . . . The rule contemplating expert testimony as to the existence and consequence of a mental disease or defect is not to be construed as permission to testify solely in terms of expert conclusions. . . . It is the

1. We note this new statute is almost identical to Fed. R. Evid. 705. There is, however, one difference. G.S. 8-58.14 (1981) allows opposing counsel to require the expert to disclose the basis of his opinion before giving his expert opinion; under Fed. R. Evid. 705, the trial court is to determine whether the basis must be disclosed before the opinion is given.

responsibility of all concerned — expert, counsel and judge — to see to it that the jury in an insanity case is informed of the expert's underlying reasons and approach, and is not confronted with ultimate opinions on a take-it-or-leave-it basis.

*United States v. Brawner,* 471 F. 2d 969, 1006 (D.C. Cir. 1972) (adopting the American Law Institute's standard governing the insanity defense).

As noted above, the Court of Appeals held that omission of the testimony quoted above constituted error. Indeed, in its brief to this Court, the State so concedes. The State continues to argue, however, as the Court of Appeals held, that the error was not prejudicial. The State correctly notes that the psychiatrist in *Wade* was allowed to give almost no testimony concerning the basis for his opinion. Contrastedly, in the case at bar, Dr. Groce was allowed to testify at some length about his examination of defendant, defendant's treatment and his diagnosis of defendant's mental condition. Therefore, the State argues, the jury here had more information concerning the basis for the doctor's opinion that defendant did not know right from wrong at the time of the offenses than did the jury in *Wade,* and, thus, the error was not prejudicial. The State also notes that defendant's second psychiatric witness, Dr. Evans, was allowed to testify as to the substance of his conversations with defendant, and that Dr. Evans' testimony embraced some of the same details about which Dr. Groce was not allowed to testify. The State implies that the error was thereby cured. We are unable, however, to agree with the Court of Appeals' holding and the State's contention that the exclusion of Dr. Groce's testimony concerning his conversations with defendant was not prejudicial error.

III.

G.S. 15A-1443(a) (1978) provides, in pertinent part, that,

[a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.

For the reasons articulated below, we are able to say that there is a "reasonable possibility" that, had the jury heard at trial all of

the testimony of Dr. Groce, a different result would have been reached at trial.

## A.

As mentioned before, the record indicates there were two expert psychiatric witnesses, Drs. Evans and Groce, both of whom testified that defendant did not know the difference between right and wrong at the time the offenses were committed. The jury apparently was not persuaded by either doctor's opinion as to defendant's sanity because it found defendant guilty of the crimes for which he was tried. Given that Allison's defense rested on these two doctors' testimony, the level of credibility the jury gave *each* doctor's opinion was crucial. It follows, therefore, that the basis of each opinion, evidence which would have gone to the credibility and coherence of each expert's opinion, was important as well.

In its opinion, the Court of Appeals wrote that the testimony of Dr. Groce which the jury heard was sufficient to demonstrate to it that he had spent "considerable time working with the defendant and had a deep and broad basis for his opinion as to the defendant's legal sanity." This statement essentially points out how limited the information was that the jury was allowed to hear: it heard only enough evidence to determine that the doctor had a basis. Specifically, the jury was told the *types* of facts or data the doctor used in reaching his opinion; it did not hear, however, what all the *data or facts* themselves were. In his dissent, Judge Becton correctly notes that "[t]he teaching of *Wade* is that the facts and factors that form and support the 'deep and broad basis for [a psychiatrist's] opinion' are as important as the opinion." *State v. Allison*, 57 N.C. App. at 641, 292 S.E. 2d at 292. Evidence as to the types of information an expert uses in reaching his opinion goes to the expert's general competence in a particular case. To evaluate the opinion itself, the jury needs to hear the facts or data upon which the expert relied in reaching his conclusion. For example, in the case at bar, Dr. Groce told the jury that he based his opinion, in part, on conversations he had with defendant. The jury did not hear, however, what the substance of those conversations was.[2] The information the jury

2. The omitted testimony would have revealed to the jury that defendant had told Dr. Groce: (1) that every day he had been hearing voices—arbitrary, hallucina-

heard helped it to evaluate only the competence of the doctor generally by allowing it to decide if the doctor used appropriate sources of information in arriving at his expert conclusion. The limited testimony it heard did not enable the jury, however, to intelligently assess the opinion itself. The exclusion of Dr. Groce's testimony concerning the substance of these conversations between defendant and himself was especially prejudicial in a case such as this, which involves the insanity defense, for this reason: such conversations tend to show the state of defendant's mind, a determination upon which defendant's innocence rests. The rule that the substance of such conversations is admissible to enable the doctor to explain to the jury his diagnosis (thus allowing the jury to assess that opinion) is predicated on this Court's recognition that "[c]onversation with one alleged to be insane is, of course, one of the best evidences of the present state of his mind." *State v. Wade*, 296 N.C. at 459, 251 S.E. 2d at 410 (quoting *State v. Alexander*, 179 N.C. 759, 765, 103 S.E. 383, 386 (1920)). Because it did not hear Dr. Groce's testimony concerning much of the significant data upon which he based his opinion the jury essentially was confronted with Dr. Groce's ultimate opinion on a take-it-or-leave-it basis.

### B.

The Court of Appeals also noted that "Dr. Evans was allowed to testify as to his conversations with the defendant and that his conversations revealed some of the same points as those conducted by Dr. Groce." *State v. Allison*, 57 N.C. App. at 640, 292 S.E. 2d at 291. Any significance the Court of Appeals attached to that point is misplaced. As noted above, "[t]he jury must be given an opportunity to evaluate the expert's conclusion" by examining the underlying facts or data of the expert's opinion. *State v. Wade*, 296 N.C. at 463, 251 S.E. 2d at 412 (quoting *State v. Griffin*, 99 Ariz. at 49, 406 P. 2d at 401). In so doing, it determines the weight and credibility to be given that particular expert's opinion. Even though the jury heard some of the same information

tion kind of voices, (2) that he had heard his family plotting to kill him, (3) that he had heard his mother offer people money to have him killed, (4) that his family made comments to the effect that he ate too much and was greedy, (5) that he had heard shooting outside the house and knew from conversation in the house that "that [the shooting] was the hired killers who had been practicing to kill him and they were waiting for him to come out of the house."

from Dr. Evans which Dr. Groce used in reaching his psychiatric opinion,[3] the jury did not know that Dr. Groce used or even knew about the information to which Dr. Evans testified. Dr. Groce gave the basis of his opinion on voir dire, out of the jury's presence. The jury had no idea upon what facts or data Dr. Groce based his expert opinion, and, thus, it had no way of evaluating Dr. Groce's opinion.

The fact that the jury heard some of the same information to evaluate Dr. Evans' testimony does not make it the "same" information as that which was excluded because the purpose for which Dr. Evans' basis testimony could be used was limited. The data or facts which Dr. Evans testified he used as the basis for his opinion was not substantive evidence: it could only be used in evaluating Dr. Evans' opinion, not Dr. Groce's. In short, because the jury had no way of evaluating Dr. Groce's opinion his opinion was "a meaningless conclusion." *Id.* Defendant was deprived of the weight and credibility of Dr. Groce's testimony — testimony which was crucial in establishing his defense of insanity. Even if we were to assume that the information excluded was the same, this Court has held that if a party offers competent testimony but that testimony is excluded, the exclusion is not harmless error as a matter of law, even though others give the same or similar testimony, because *the offering party is entitled to the credibility and weight that would have been accorded the testimony of the excluded witness. State v. Rice,* 222 N.C. 634, 24 S.E. 2d 483 (1943); *State v. Dickey,* 206 N.C. 417, 174 S.E. 316 (1934); *Eaves v. Coxe,* 203 N.C. 173, 165 S.E. 345 (1932). The reason for the rule is that a jury might have believed the testimony of the witness whose evidence was excluded and for one reason or another might not believe the testimony of the witnesses whose testimony was received. *Eaves v. Coxe,* 203 N.C. at 177-78, 165 S.E. at 347. *See also Wells v. Bissette,* 266 N.C. 774, 147 S.E. 2d 210 (1966) (exclusion of testimony of two of the defendant's witnesses who

---

3. Furthermore, we emphasize the point that the jury heard only *some* of the same data in connection with Dr. Evans' subsequent testimony as that which was excluded. The fact that defendant told Dr. Groce he had heard shooting outside the house and knew from conversation in the house that "that [the shooting] was the hired killers who had been practicing to kill him and they were waiting for him to come out" was not mentioned at all. This omission is especially crucial in light of Dr. Groce's testimony that paranoid thoughts characteristic of defendant's illness are "thoughts of some intent to be harmed."

would have testified to the defendant's good character for purposes of supporting his credibility as a witness was prejudicial error); *Walker v. Continental Baking Co.*, 262 N.C. 534, 138 S.E. 2d 33 (1964) (exclusion of testimony corroborating the defendant's testimony was prejudicial error). Under the facts of this case, the credibility and weight accorded Dr. Groce's opinion testimony was crucial. Therefore, exclusion of some of the facts or data which provided the basis for Dr. Groce's opinion and which would help the jury evaluate that opinion was not harmless error.

## IV.

In summary, we hold that the trial court erred in failing to follow the rule in *Wade* that juries are to hear the basis for a psychiatrist's (or psychologist's) expert opinion.[4] We also hold this error was prejudicial because there is a "reasonable possibility" that had the jury heard the evidence which was excluded it might well have accepted Dr. Groce's conclusion that defendant did not know the difference between right and wrong at the time of the incidents, and, thus, would have found defendant not guilty by reason of insanity. In other words, we hold "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached" by the jury. G.S. 15A-1443(a) (1978). Because of the prejudicial error committed defendant is entitled to a new trial.

In light of our holding above, it is unnecessary for us to address the remaining two contentions defendant presented to the Court of Appeals.

Finally, in examining the verdict sheets contained in the record we note each issue was submitted to the jury as a question which asked only whether defendant was guilty or not guilty of each charge for which he was tried. In effect, the jury was asked to render only general verdicts because the trial court neglected to include on the verdict sheet as one of the possible verdicts not guilty by reason of insanity. We suggest that the trial court, in the event of retrial, study closely the recommendations Justice Brock made in *State v. Linville*, 300 N.C. 135, 265 S.E. 2d 150

---

4. For an excellent discussion of this area of the law see Blakey, *Examination of Expert Witnesses in North Carolina*, 61 N.C.L. Rev. 1 (1982).

(1980), when he spoke for this Court on the order in which issues are to be submitted to the jury in insanity cases.

For the reasons stated, we reverse the decision of the Court of Appeals and remand to that court with instructions that it remand to the Superior Court, Gaston County, for a new trial.

Reversed and remanded.